# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JOSEPH GIBSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:24cv694 |
| | ) |
| DIANNE PARNELL, | ) |
| STEPHEN WILEY, and | ) |
| ANTI-DEFAMATION LEAGUE, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommendation on Plaintiff's Application to Proceed In Forma Pauperis (Docket Entry 1) ( the "Application") in conjunction with his pro se Complaint (Docket Entry 2) (the "Complaint"). For the reasons that follow, the Court will grant Plaintiff's instant Application for the limited purpose of recommending dismissal of this action under 28 U.S.C. § 1915(e)(2) as frivolous and for failing to state a claim.

## RELEVANT STANDARDS

"The federal *in forma pauperis* statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts solely because his poverty makes it impossible for him to pay or secure the costs." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 953 (4th Cir. 1995) (en banc) (internal quotation marks omitted).

"Dispensing with filing fees, however, [is] not without its problems. . . . In particular, litigants suing in forma pauperis d[o] not need to balance the prospects of successfully obtaining relief against the administrative costs of bringing suit." Nagy v. FMC Butner, 376 F.3d 252, 255 (4th Cir. 2004). To address this concern, the in forma pauperis statute provides that "the court shall dismiss the case at any time if the court determines . . . the action . . . (i) is frivolous . . . [or] (ii) fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B).

As to the first of those grounds, the United States Supreme Court has explained that "a complaint . . . is frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "The word frivolous is inherently elastic and not susceptible to categorical definition. . . . The term's capaciousness directs lower courts to conduct a flexible analysis, in light of the totality of the circumstances, of all factors bearing upon the frivolity of a claim." Nagy, 376 F.3d at 256-57 (internal quotation marks omitted). In assessing such matters, the court may "apply common sense." Nasim, 64 F.3d at 954.

"[The C]ourt may consider subject matter jurisdiction as part of the frivolity review." Overstreet v. Colvin, 4:13-CV-261, 2014 WL 353684, at *3 (E.D.N.C. Jan. 30, 2014) (citing Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999) (noting that

2

"[d]etermining the question of subject matter jurisdiction at the outset of the litigation is often the most efficient procedure")); accord, e.g., King v. Richmond Cnty. Tax Assessor, No. 1:23CV492, 2024 WL 3293948, at *1 (M.D.N.C. Apr. 4, 2024) (Webster, M.J.), recommendation adopted, 2024 WL 3291796 (M.D.N.C. July 3, 2024) (Osteen, J.). "'[F]ederal courts are courts of limited jurisdiction,' constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." In re Bulldog Trucking, Inc., 147 F.3d 347, 352 (4th Cir. 1998) (quoting Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978)). The party invoking a federal court's jurisdiction bears the burden of establishing subject matter jurisdiction. See Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982) ("The burden of proving subject matter jurisdiction . . . is on the plaintiff, the party asserting jurisdiction."). As such, "[t]he complaint must affirmatively allege the grounds for jurisdiction," Overstreet, 2014 WL 353684, at *3, and the Court must dismiss the action if subject matter jurisdiction does not exist, see Fed. R. Civ. P. 12(h)(3).

As relevant to this matter, federal courts possess "original jurisdiction of all civil actions arising under the Constitution [and] laws . . . of the United States," 28 U.S.C. § 1331, as well as actions involving diversity of citizenship, see 28 U.S.C. § 1332. Diversity jurisdiction requires complete diversity among

3

the litigants; in other words, every plaintiff must reside in a different state from every defendant. See Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553 (2005) ("[T]he presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action."); Sanderlin v. Hutchens, Senter & Britton, P.A., 783 F. Supp. 2d 798, 801 (W.D.N.C. 2011) ("[The p]laintiffs have not satisfied the complete diversity requirement. Specifically [the p]laintiffs and [d]efendant Hutchens, Senter & Britton, P.A. are both citizens of North Carolina.").

When a court possesses federal question jurisdiction over a federal claim, "[a] claim that neither arises from a federal question nor satisfies the requirements for diversity jurisdiction may nevertheless be entertained in federal court [via] supplemental jurisdiction under 28 U.S.C. § 1367." Mebane v. GKN Driveline N. Am., Inc., 499 F. Supp. 3d 220, 231 (M.D.N.C. 2020) (Biggs, J.). "Under supplemental jurisdiction, '[t]he state and federal claims must derive from a common nucleus of operative fact' where a plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.'" Id. (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966)). Importantly, supplemental jurisdiction constitutes "a doctrine of discretion," in regards to which "[n]eedless decisions of state law should be avoided."

4

United Mine Workers, 383 U.S. at 726. As such, if "federal claims are dismissed before trial . . . the state claims should be dismissed as well." Id.; see also 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim [if] the district court has dismissed all claims over which it has original jurisdiction.").

Turning to the second ground for dismissal under 28 U.S.C. § 1915(e)(2)(B), a plaintiff "fails to state a claim on which relief may be granted," 28 U.S.C. § 1915(e)(2)(B)(ii), when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotation marks omitted). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

## BACKGROUND

Plaintiff commenced this action against the Anti-Defamation League and two individuals whom the Complaint identifies as North Carolina residents (collectively, "Defendants"). (See Docket Entry 2 at 2.) Regarding this Court's jurisdiction, the Complaint states:

> This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332, as the parties are from different states and the amount in controversy exceeds $75,000. Plaintiff, Joseph A. Gibson, is a resident of North Carolina, while Defendants are residents of different states. This Court also has jurisdiction under 28 U.S.C. § 1331, as the case involves federal questions, including defamation and civil rights violations under federal law.

(Id. at 6.)[1]

As relevant to the Court's review at this juncture, the Complaint further alleges:

> Plaintiff, Joseph A. Gibson, a candidate for the North Carolina House of Representatives District 65 in the 2024 Republican primary, brings this action against Defendants[, ]Dianne Parnell, Stephen Wiley, and The Anti-Defamation League (ADL)[,] for false and defamatory statements, libel, and civil rights violations.
>
> In 2022, the ADL published an article falsely claiming that Plaintiff is a member and supporter of the National Socialist Movement (NSM), a Neo-Nazi group based in Florida. The article alleged that the NSM supported Plaintiff and that he was one of their members solely based upon a screenshot on the Telegra[m] channel[. ]In January 2024, Defendants Parnell and Wiley conspired to have Joseph Gibson[,] Plaintiff[,] removed from the North Carolina election ballot by falsely claiming that

---

1 For consistency, this Opinion omits the word "the" before "Plaintiff" or "Defendants" in all quotations from the Complaint. Docket Entry page citations utilize the CM/ECF footer's pagination.

> Plaintiff had no citizenship rights to serve as a public
> official due to a felony conviction in Connecticut[] 30
> years ago[.]  This issue was not raised during the 2022
> primary when Plaintiff was also on the ballot.
>
> In January 2024, the Rockingham County Board of
> Elections and the North Carolina State [] Board of
> Elections cleared Plaintiff, confirming he had full
> citizenship rights and was eligible to run for office.
>
> Following this ruling, Defendants Parnell and Wiley
> gave numerous press interviews, falsely stating that
> Plaintiff had no citizenship rights. Defendant Wiley, in
> a TV interview with WRAL[,] called Plaintiff a liar,
> anti-government extremist, and Neo-Nazi, further claiming
> that Democrats in Rockingham County supported Plaintiff
> to portray Republicans as Neo-Nazis. [P]laintiff has
> suffered irreparable harm, significant psychological
> damage, and stress due to Defendants' actions, which have
> slandered his character and reputation. Defendants'
> actions have violated Plaintiff's [f]irst[- and]
> fourteenth[-a]mendment rights under the U.S. Constitution
> and the North Carolina State Constitution. Plaintiff
> publicly in press statements requested Defendants retract
> their statements and even [wrote] to all 3 Defendants
> requesting these statements be withdrawn[.] No response
> was ever received[.]

(Id. at 6-7; see also id. at 8 ("Defendants' actions violated Plaintiff's civil rights under Section 1983 of the Civil Rights Act . . . .").)

The Complaint seeks, inter alia, one million dollars in compensatory damages, one million dollars in punitive damages, and injunctive relief.  (See id. at 8.)

## DISCUSSION

### I. Federal Claims

According to the Complaint, Defendants violated Plaintiff's rights under the United States Constitution. (See id. at 7.)

7

"Section 1983 . . . provides a method for vindicating federal constitutional and statutory rights." Jones v. Chandrasuwan, 820 F.3d 685, 691 (4th Cir. 2016) (citing 42 U.S.C. § 1983). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S 42, 48 (1988). A person acts under color of state law when they "exercise[] power possessed by virtue of state law and made possible only because [they are] clothed with the authority of state law." Id. at 49 (internal quotation marks omitted). Here, the Complaint does not set forth any factual matter showing that Defendants exercised power possessed by virtue of state law (see Docket Entry 2 at 6-8), and thus the Complaint fails to state an actionable Section 1983 claim.

To the extent Plaintiff attempted to assert a claim under 42 U.S.C. § 1985, based on the allegation that Defendants "conspired to remove Plaintiff from the election ballot based on false information, violating federal laws related to election fraud" (id. at 8), that claim fails as a matter of law. As relevant here, Section 1985(1) addresses conspiracies to prevent a person from holding federal public office by use of force, threat, or intimidation. See 42 U.S.C. § 1985(1). However, Section 1985(1) relates solely to federal officers or candidates for federal

8

office. See id. ("If two or more persons . . . conspire to prevent . . . any person from accepting or holding any office . . . under the United States . . . ."); see also Bald Head Ass'n v. Curnin, 7:09-CV173, 2010 WL 1904268, at *6 (E.D.N.C. May 10, 2010) ("[Section] 1985(1) . . . prohibits conspiracies to prevent a federal officer from performing his duties or from accepting such office."); Baron v. Carson, 410 F. Supp. 299, 301 (N.D. Ill. 1976) (noting the "clarity of the statutory language" in Section 1985(1) and stating that it is "inapplicab[le] . . . to anyone but federal officers"). Further, a Section 1985(1) claim involving a candidate for federal office requires factual allegations of "force, intimidation, or threat." 42 U.S.C. § 1985(1); see also Sellner v. Panagoulis, 565 F. Supp. 238, 245 (D. Md. 1982) ("[S]ection 1985(1)[] requires force, intimidation, or threat.") (internal quotation marks omitted). Here, Plaintiff lacks a viable Section 1985(1) claim because Section 1985(1) applies solely to candidates for federal office, and Plaintiff sought a state office. (See Docket Entry 2 at 6.) The claim also fails because the Complaint makes no allegations that Defendants used force, intimidation, or threat in their alleged conspiracy to keep Plaintiff off the state election ballot. (See id. at 6-8.)

Separately, though, Section 1985(3) prohibits conspiracies to deprive an individual of his equal enjoyment of rights secured by the law. See 42 U.S.C. § 1985(3); Simmons v. Poe, 47 F.3d 1370,

9

1376-77 (4th Cir. 1995). To state a claim under Section 1985(3), a complaint must allege that two or more individuals, "motivated by a specific class-based, invidiously discriminatory animus," deprived the plaintiff of his equal enjoyment of rights secured by the law. Simmons, 47 F.3d at 1376. Further, "[a]llegations of parallel conduct and a bare assertion of a conspiracy are not enough for a claim to proceed" under Section 1985(3). Thomas v. The Salvation Army S. Territory, 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted). Instead, "a claimant must show an agreement or meeting of the minds by [the] defendants to violate the claimant's constitutional rights." Simmons, 47 F.3d at 1377. Here, the Complaint lacks any indication that a specific, class-based, discriminatory animus motivated Defendants or that they came to an agreement or meeting of the minds. (See Docket Entry 2 at 6-8.) As such, the Complaint fails to state a viable Section 1985(3) claim. See Thomas, 841 F.3d at 637.[2]

Accordingly, the Court should dismiss Plaintiff's federal claims for "fail[ing] to state a claim on which relief may be granted," 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[2] For its part, "Section 1985(2) prohibits conspiracies to prevent witnesses from testifying in court, injuring witnesses who have testified, or attempting to influence or injure grand or petit jurors." Stankowski v. Farley, 251 F. App'x 743, 747 n.1 (3d Cir. 2007); see also 42 U.S.C. § 1985(2). It therefore lacks relevance to this action. (See Docket Entry 2 at 6-8 (making no allegations about such matters).)

10

**II. State Claims**

Plaintiff's remaining defamation claim arises under state law[3] and thus does not satisfy federal question jurisdiction.[4] Diversity of citizenship jurisdiction similarly does not exist for this claim because Plaintiff and two of the three Defendants reside in North Carolina, and thus do not qualify as diverse. (See Docket Entry 2 at 2.) Given the recommendation of dismissal of Plaintiff's federal claims, the Court should likewise decline to exercise supplemental jurisdiction over Plaintiff's state claim.

## CONCLUSION

The Complaint fails to state a federal claim, diversity of citizenship jurisdiction does not exist, and the Court should decline to exercise supplemental jurisdiction over any state claims.

---

3 The Complaint asserts that "Defendants' statements . . . constitut[ed] defamation under federal law and [s]tate laws." (Docket Entry 2 at 8.) However, "claims such defamation . . . are state-based claims . . . ." Dickerson v. City of Charleston Police Dep't, Civ. Action No. 1:10-1625, 2010 WL 3927513, at *1 (D.S.C. Aug. 26, 2010), recommendation adopted, 2010 WL 3909497 (D.S.C. Sept. 30, 2010); accord, e.g., McRae v. Jackson Lewis, P.C., No. 5:21cv91, 5:21cv92, 2021 WL 3009022, at *2 (W.D.N.C. July 15, 2021); Harr v. WRAL-5 News, No. 5:20cv362, 2021 WL 141697, at *3 (E.D.N.C. Jan. 14, 2021), aff'd, 853 F. App'x 859 (4th Cir. 2021).

4 Although the Complaint mentions the North Carolina Constitution, it raises no claim regarding any state constitutional violations. (See Docket Entry 2 at 7-8.) In any event, the Court lacks diversity of citizenship jurisdiction over any such claim and should decline to exercise supplemental jurisdiction over any state claims, for the reasons discussed hereinafter.

**IT IS THEREFORE ORDERED** that the Application to Proceed in Forma Pauperis (Docket Entry 1) is **GRANTED** for the limited purpose of considering this recommendation of dismissal.

**IT IS FURTHER RECOMMENDED** that Plaintiff's federal claims be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B), and that Plaintiff's state claims be dismissed without prejudice under 28 U.S.C. § 1367(c)(3).

This 30th day of January, 2025.

>     /s/ L. Patrick Auld    
>  **L. Patrick Auld**
> **United States Magistrate Judge**

12

Case 1:24-cv-00694-LCB-LPA   Document 7   Filed 01/30/25   Page 12 of 12